IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00236-RM-03

UNITED STATES OF AMERICA,

    Plaintiff

v.

3.   **CHRISTOPHER JOSHUA CHAVEZ,**

    Defendant

## PLEA AGREEMENT

The United States of America, by and through its undersigned Assistant United States Attorney for the District of Colorado, and the defendant, Christopher Joshua Chavez, personally and by and through counsel, AFPD Shira Kieval, hereby submit the following plea agreement pursuant to the provisions of D.C.COLO.LCrR 11.1.

### I. AGREEMENT

A.     The defendant agrees to plead guilty to Counts Ten and Eleven of the Superseding Indictment. The Government agrees that it will dismiss with prejudice Count One of the Superseding Indictment at the conclusion of a sentencing hearing during which the Court accepts this plea agreement of the parties. The defendant also agrees to forfeit his interest, if any, in all of the items listed in the forfeiture allegation of the Superseding Indictment.

B.     In exchange for the defendant's plea of guilty, the United States agrees to: (1) recommend that the Court give the defendant full credit for acceptance of responsibility per U.S.S.G. §3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §3C1.1 and §3E1.1,

1

Court's Exhibit

1

commentary (application note 4) between the time of his guilty plea and sentencing; and (2) recommend a sentence at the mandatory minimum statutory sentence for the two counts of conviction, that is 15 years or 180 months.

C.     The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the Government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalties provided in the statutes of conviction; (2) the sentence exceeds the sentencing guidelines range for an offense level of 26; or (3) the Government appeals the sentence imposed. If any of these criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

D.     The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

E.     This plea agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(B).

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which the defendant will plead guilty are as follows:[1]

### Count Ten
### POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE
### 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)

To find the defendant guilty of this crime, the Government must prove each of the following elements beyond a reasonable doubt:

*First*: the defendant knowingly or intentionally possessed a controlled substance as charged;

*Second*: the controlled substance in this case was, in fact, 500 grams or more of methamphetamine; and

*Third*: the defendant possessed the controlled substance with the intent to distribute it.

### Count Eleven
### POSSESSION OF A FIREARM DURING AND IN FURTHERANCE OF A DRUG TRAFFICKING CRIME
### 18 U.S.C. § 924(c)(1)(A)(i)

To find the defendant guilty of this crime, the Government must prove each of the following elements beyond a reasonable doubt:

*First*: the defendant committed the crime charged in Count Ten of the Superseding Indictment, which is a drug trafficking crime;

*Second*: the defendant possessed a firearm in furtherance of this crime.

The term "firearm" means any weapon that will, is designed to, or may readily be converted to expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

---

[1] 10th *Circuit Pattern Jury Instruction* 2.85, Possess with Intent to Distribute a Controlled Substance (2011)
10th *Circuit Pattern Jury Instruction* ) 2.45.1 Possession of a firearm during and in furtherance of a drug trafficking crime (2011)

3

Possession "in furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense.

Mere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime, because the firearm's presence may be coincidental or entirely unrelated to the underlying crime. Some factors that may help in determining whether possession of a firearm furthers, advances, or helps advance a drug trafficking crime include, but are not limited to:

1. the type of criminal activity that is being conducted;
2. accessibility of the firearm;
3. the type of firearm;
4. whether the firearm is stolen;
5. the status of the possession (legitimate or illegal);
6. whether the firearm is loaded;
7. the time and circumstances under which the firearm is found; and
8. proximity to drugs or drug profits.

### III. STATUTORY PENALTIES

A. The statutory penalty for the offense charged in Count Ten of the Superseding Indictment is not less than 10 years and not more than life imprisonment, not more than a $10,000,000 fine, or both; not less than 5 years and up to a lifetime of supervised release; and a $100 special assessment fee.

B. The statutory penalty for the offense charged in Count Eleven of the Superseding Indictment is a mandatory consecutive sentence of not less than 5 years and up to life imprisonment, not more than a $250,000 fine, or both; not more than 5 years of supervised release and a $100 special assessment fee.

C. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV. COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to: possess firearms, vote, hold elected office and sit on a jury.

## V. STIPULATION OF FACTS

A. The parties agree that there is a factual basis for the guilty pleas that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

B. This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors or to the Court's overall sentencing decision.

C. The Government submits that it could prove the following facts beyond a reasonable doubt:[2]

1. On May 4, 2018 at approximately 2:15 p.m., officers and agents from the Denver Field Division, DEA Enforcement Group Two, West Metro Drug Task Force and Denver Police Department (DPD) District Four Narcotics Unit began conducting surveillance at 528 Lowell Boulevard, Denver, Colorado. Law enforcement officers previously identified the residence as being involved in the distribution of large amounts of methamphetamine and were informed that the residence contained a large cache of weapons including assault rifles with large capacity magazines. Law enforcement officers were conducting surveillance on the residence in anticipation of serving a federal search warrant at the residence at approximately 3:00 p.m. on that day.

2. At approximately 2:45 p.m., DPD District Four Narcotics Detective Bauer observed a silver Cadillac sedan with Nebraska license plates, arriving at the residence and observed a Hispanic male, wearing a black t-shirt and blue jeans, later identified as Christopher Joshua Chavez, exit the vehicle and enter the residence at 528 Lowell Boulevard, Denver. Detective Bauer then

---

[2] This defendant's counsel has some minor disagreements with the facts that from the Government's view do not affect the Government's proof of the elements of the offenses.

observed the vehicle leave the residence, drive about a block and half away and park along the curb in the 400 block of Lowell Boulevard. It was noted that the vehicle still contained three individuals. It also should also be noted that the occupants of the vehicle were looking around in a nervous manner and appeared to be looking for police presence in the area.

3. At approximately 3:10 p.m., Detective Bauer observed Christopher Chavez exit the residence at 528 Lowell Boulevard with an orange Home Depot bucket. Chavez was observed walking northbound on Lowell Boulevard and then eastbound on the 6th Avenue Frontage Road. SA Donahue then observed the silver Cadillac sedan head northbound on Lowell Boulevard and then eastbound on the 6th Avenue Frontage Road. SA Donahue observed the vehicle pull to the side of the road at the 6th Avenue Frontage Road and observed Chavez enter the rear driver's side of the vehicle. The vehicle then went southbound on Knox Court and turned onto 5th Avenue. Law enforcement officers immediately observed that the silver Cadillac that Chavez riding in was conducting maneuvers consistent with counter surveillance often employed by drug traffickers. The Cadillac was conducting a counter surveillance technique commonly called "squaring the block." This technique occurs when the drug trafficker drives around the block several times, sometimes heading in different directions in order to identify any law enforcement vehicles that may be following.

4. During this time, Detective Vance observed the Cadillac fail to signal for a turn. The driver of the Cadillac pulled into a driveway in an effort to avoid the patrol car following him. A traffic stop was then initiated on the Cadillac in the 400 block of Lowell Boulevard. Law Enforcement Officers on scene gave the driver of the vehicle verbal commands to turn off the vehicle and roll down all the windows of the vehicle. The driver of the vehicle rolled down the front driver side window and the front passenger side window and those occupants placed their hands out of the windows. Law enforcement officers gave commands to the rear driver side passenger (Christopher Chavez) and the rear passenger side occupant (Jonathan James Lovato) to roll down the rear windows of the vehicle and to show their hands. Despite numerous commands, Chavez and Lovato continued to make furtive movements in the back seat area of the vehicle. During this time, Chavez was observed bending down several times towards the floorboard in the rear driver seat area of the vehicle. Based on observations, training, and experience, law enforcement officers believed that Chavez was either retrieving a handgun or attempting to stash one in the area in which he was seated. After approximately five minutes of giving verbal commands to Chavez and Lovato to roll down the rear windows of the vehicle and to show their hands, they finally complied. Chavez and Lovato were ordered out of the vehicle as were the driver and front seat passenger.

5. After Chavez was ordered out of the vehicle and detained pending the narcotics investigation, it was determined that he had an outstanding felony escape arrest warrant issued by the Colorado Department of Corrections

(DOC). Conducting a search incident to arrest, revealed that Chavez was in possession of a large amount of suspected heroin (50.2 gross grams), suspected methamphetamine (60.9 gross grams) and a large undetermined amount of U.S. Currency, on his person. It was determined that Chavez was a convicted felon with 3 felony convictions, two of which involved drugs.

6. After Lovato was ordered out of the vehicle and detained pending the narcotics investigation, it was determined that he also had numerous outstanding arrest warrants. It was also determined that Lovato was a convicted felon with prior felony convictions, one of which involved drugs.

7. Law enforcement officers walked around the vehicle and observed numerous items related to drug trafficking in plain sight to include a large digital scale on the front passenger floorboard and another digital scale and shards of suspected methamphetamine on the rear passenger floorboard where Lovato had been seated. Law enforcement officers then conducted a probable cause search of the vehicle pursuant to the motor vehicle exception to the search warrant requirement. On the rear driver side floorboard, where Chavez had been seated, law enforcement officers observed and seized a .40 caliber, Berretta APX handgun. The .40 caliber, Berretta APX handgun was discovered to be loaded with a round chambered in the weapon and the magazine contained thirteen additional rounds of ammunition. Law enforcement officers also located two large, approximately one pound each, plastic Zip-lock containers that contained suspected methamphetamine. The Zip-lock containers that contained suspected methamphetamine were located on the rear passenger floorboard where Lovato had been seated. It should be noted that the Zip-lock containers were heavily damaged and appeared to have been kicked and shoved under the rear passenger seat in an unsuccessful attempt to hide them from law enforcement. The loaded handgun located on the rear driver side floorboard of the vehicle was found approximately two feet from where the methamphetamine was located. Although the pistol in question was possessed by Chavez, it was located approximately two feet away from Lovato and the drugs.

8. The drugs were subsequently analyzed by a DEA forensic chemist who determined that the drugs in question were, in fact, 863.3 grams of methamphetamine with a purity level of 98%, and 27.6 grams of methamphetamine with a purity level of 96%, yielding a total of 872.4 grams of methamphetamine (actual) and 13.54 grams of heroin.[3]

---

[3] The heroin and methamphetamine were not converted to marihuana equivalents as it does not affect the drug quantity offense level and this defendant, an admitted heroin addict at the time of his arrest, could reasonably argue that this heroin was for his personal use.

9. During post-arrest interviews, it was learned that Chavez was acting as a broker for Lovato as Chavez had drug connections with codefendant Lucero. Lovato, in turn, was acting a broker on behalf of the two Nebraska-based occupants of the vehicle who were the actual purchasers of the methamphetamine.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. §3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under the advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A. As set forth above, the parties agree that the drug quantity offense level would ordinarily be **34** under §2D1.1(c)(3) of the sentencing guidelines (At least 500 grams, but less than 1.5 kilograms of methamphetamine (actual) or "Ice"). However, if the Court grants the 2-level mitigating role in the offense set forth below, under §2D1.1(a)(5)(ii), the drug quantity offense level is capped at offense level **31**.

B. There are no victim-related, obstruction or multiple count adjustments. Regarding role in the offense, the parties stipulate and agree that this defendant should receive a 2-level mitigating role in the offense pursuant to §3B1.2(b), resulting in an adjusted drug quantity offense level of **29.**

C. Acceptance of Responsibility: The defendant should receive a 3-level adjustment for acceptance of responsibility under §3E1.1, resulting, from the parties' perspective, in a total offense level of **26**.

D. Criminal History Category: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based upon information currently available to the parties, it is estimated that this defendant will have at least seven and possibly up to nine Criminal History Points that will result in a Criminal History Category of IV.

E. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments will not apply.

F. Imprisonment: The advisory guideline range of imprisonment for the drug count of conviction, Count Ten, resulting from an offense level of 26 and a Criminal History Category of IV would ordinarily result in a sentence of 92 to 115 months. However, this defendant is subject to the mandatory minimum statutory sentence of 10 years or 120 months, plus a mandatory minimum statutory consecutive sentence of 60 months for the firearms charge in Count Eleven, yielding a mandatory minimum statutory sentence of 180 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level for the count of conviction could conceivably result in a range from 120 months, the statutory mandatory minimum sentence, plus at least 60 months, to 150 months, plus at least 60 months, the top of the sentencing guidelines range for Criminal History Category VI. In any event, the guideline range would not exceed the statutory maximum sentence applicable to the counts of conviction.

G.   Fine and Mandatory Victims Assessment Fee:  Pursuant to guideline §5E1.2, assuming the estimated offense level of 26, the fine range for this offense would be $25,000 to $10,250,000, the statutory maximum fine, plus applicable interest and penalties. Further, this defendant will be required to pay a mandatory victims' special assessment fee of $100 per count for a total of $200.

H.   Supervised Release:  Pursuant to guideline §5D1.2(a)(1), if the Court imposes a term of supervised release, that term shall be not less than five years, but up to a lifetime as to Count Ten and not more than 5 years as to Count Eleven.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guidelines range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guidelines range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guidelines range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines in length or in form, within the advisory

10

guidelines range, or above the advisory guidelines range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the Government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Respectfully submitted,

Date: 11-5-18

Christopher Joshua Chavez
Defendant

Date: 11-5-18

Shira Kieval
Attorney for Defendant

Date: 5 NOV 18

James R. Boma
Assistant U.S. Attorney

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 18-cr-00236-RM-03

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. ANTHONY ELI LUCERO, a/k/a "Blade,"
2. JONATHAN JAMES LOVATO
3. **CHRISTOPHER JOSHUA CHAVEZ**
4. DONOVAN RICKY ROYBAL,
5. WYATT BARRETT, a/k/a "Brett Cravens," and
6. NICHOLAS MACMILLAN,

        Defendant.

---

## SUPPLEMENT TO PLEA AGREEMENT BY CHRISTOPHER CHAVEZ

---

CHRISTOPHER CHAVEZ hereby provides the Court with this supplement to record Mr. Chavez's disagreement with certain facts contained in the plea agreement being entered on November 5, 2018.

**Supplement One -**

    Regarding Paragraph 4 of the Plea Agreement: Christopher Chavez disagrees with some of the information contained in this paragraph, based on his memory of events and a body-warn camera recording of the events. He recognizes that the disagreement will not impact the guidelines calculation in this case. He believes that the facts are as follows:

    During this time, Detective Vance observed the Cadillac fail to signal for a turn. The driver of the Cadillac pulled into a driveway in an effort to avoid the patrol car following him. A traffic stop was then initiated on the Cadillac in the 400 block of Lowell Boulevard. The rear

driver's side window was already lowered most of the way before the car pulled over, and it was not raised during the traffic stop. Law enforcement officers gave commands to the rear driver side passenger (Christopher Chavez) and the rear passenger side occupant (Johnathan James Lovato) to show their hands. Despite numerous commands, they did not comply for a few minutes. Law enforcement observed some furtive movements in the back seat area of the vehicle. Additionally, there were two full-sized pit bulls in the back seat, who were moving around excitedly at that time. After they began complying with law enforcement commands, Chavez and Lovato were ordered out of the vehicle. The driver and front seat passenger were ordered out as well.

**Supplement Two-**

Regarding Paragraph 5 of the plea agreement: Christopher Chavez disagrees with some of the information contained in this paragraph, based on his personal knowledge and laboratory reports provided in discovery. He did not have a warrant for escape. Rather, he had a warrant because he had absconded from parole. Additionally, the drug weights reported in this paragraph are over twice as large as the net weights, as established by the government's crime lab and included in Paragraph 8. Mr. Chavez does not understand why the gross weights reported in this paragraph are so high.

Date: 11-5-18        _Chris Chavez_
                     Christopher Joshua Chavez
                     Defendant

Date: 11/5/18        _____
                     Shira Kieval
                     Attorney for Christopher Chavez